Chen C. WANG, Victoria R. Wang, and
EIC Group, Inc., Plaintiffs,

v.

James HORIO, Defendant.

In re the Petition of James
HORIO, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. C–89–0234–CAL.

United States District Court,
N.D. California.

Sept. 12, 1989.

**1374**

David R. Benjamin, Robert Navarro, Bourdette, Benjamin & Weill, Martin A. Schainbaum, San Francisco, Cal., for plaintiffs.

Thomas J. Losavio, Elizabeth J. Gardner, Low, Ball & Lynch, San Francisco, Cal., for defendant.

## OPINION AND ORDER

LEGGE, District Judge.

Defendant James Horio petitions the court to find and certify that he was an employee of the United States, acting within the course and scope of his employment, at the time of the incidents from which this case arises. If the petition is granted, the results are that the action then proceeds as an action against the United States; the United States is substituted as the party defendant, and can then raise all defenses which it could raise if it had been sued separately. This procedure and result were recently added to the United States Code in 28 U.S.C. § 2679(d)(3) (Nov. 18, 1988, Pub.L. 100–694 §§ 5.6, 102 Stat. 4564). There are as yet no reported decisions interpreting this section or defining the procedures to be followed, so this court is writing on a clean slate.

The petition by Horio is opposed by the United States and by the plaintiffs. The court determined that an evidentiary hearing was required in order to determine the necessary factual issues. The evidentiary hearing was conducted, and the matter was submitted to the court for decision.

The court has reviewed the testimony and the exhibits presented at the hearing, the arguments of counsel, the applicable authorities, and the record of the case. This opinion and order shall constitute the court's findings and certification.

### I.

Certain of the facts are undisputed. Plaintiffs Chen and Victoria Wang hired Horio as a financial consultant. In the course of working for the Wangs, Horio learned that they and another individual were possibly concealing from the United States Internal Revenue Service ("IRS") significant amounts of commission income paid to another person. Horio voluntarily approached the IRS and reported the information. The IRS then commenced a criminal investigation of the Wangs. The IRS used Horio as a continuing informant against the Wangs, and on several occasions had him secretly record conversations with the Wangs. Horio's activities will be discussed in more detail below.

In part as a result of Horio's work, the Wangs and another individual were indicted by a grand jury on income tax charges. The United States subsequently dismissed the indictment against the Wangs after this court suppressed certain evidence which the government believed to be crucial to their conviction.

### II.

Following dismissal of the indictment, the Wangs filed this civil action in state court against Horio. The action was removed to this court, and the court has

jurisdiction over this proceeding under 28 U.S.C. § 2679(d)(3).

The complaint[1] alleges several causes of action. It appears from a review of the complaint that all of the causes of action are based upon Horio's activities in informing upon the Wangs. For purposes of this petition, the court therefore need not distinguish among all of the causes of action[2]. However, the petition does not apply to the tenth cause of action; that is an alleged liability under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which does not have the protections of the statute involved here; 28 U.S.C. 2679(b)(2).

### III.

After Horio was served with process in this case, he communicated with the United States Attorney General, requesting the Attorney General to certify, under 28 U.S.C. § 2679(d)(2), that he was acting within the course and scope of his employment at the time of the incidents out of which this suit arose. After initially indicating a willingness to do so, or a willingness to at least defend Horio under 28 U.S.C. § 517, the Attorney General ultimately declined to make the certification.[3]

Horio then filed this petition under 28 U.S.C. § 2679(d)(3). That section provides in relevant part as follows:

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and

the United States shall be substituted as the party defendant....

The United States opposes the petition primarily on two grounds: (1) that Horio was not acting as an employee of the United States; and (2) that this court's inquiry into the Attorney General's decision in that regard cannot be made in a plenary proceeding, but must be only under the review standards of the Administrative Procedure Act.

### IV.

Because the statute is new, because Congress did not define the procedures and standards to be used, and because there are no reported decisions under this new statute, it is necessary for this court to define the procedures and standards to be followed here.

This court believes that the only issues to be determined on this petition are (1) whether Horio was an employee of the United States, and (2) whether he was acting within the scope of his employment at the time of the incidents out of which this suit arises. The court does not believe that this petition is the procedure by which to determine all of the consequences of the granting of the petition. That is, it is obvious that if the petition is granted the United States will then raise the defenses available to it. 28 U.S.C. § 2679(d)(4). However, the court does not believe that those defenses are properly a subject of this petition proceeding, and they must await further motions after the issues of employment and scope are determined.

■ The court concludes that its ruling on the petition is to be made by a plenary consideration of the evidence, rather than by an Administrative Procedure Act review of the Attorney General's decision. This conclusion is derived from the language of the statute, which vests jurisdiction in this

---

**1.** Amended complaint, filed January 30, 1989.

**2.** Such distinctions may be necessary later, if the United States moves to dismiss all or some of the causes of action based upon various defenses available to the United States under applicable statutes and cases.

**3.** Horio asserts that by virtue of this conduct, the United States is estopped to deny Horio the requested certification. However, this court finds that no conduct by the Attorney General was sufficient to constitute an estoppel of the United States.

court "to find and certify" the facts claimed by the petition. It seems apparent from the language of both subsections (d)(2) and (d)(3) that the Attorney General's decision adverse to a petitioner is not one to be reviewed by a district court only upon the Attorney General's record, and only under the limited scope of review of the Administrative Procedure Act.

■ Nor does this court believe, as respondent argues, that there is a distinction in this court's jurisdiction between the issue of whether Horio was an employee and the issue of whether he was acting within the scope of his employment. It appears from the language of subsection (d)(3) that the court's power to find and certify "that the employee was acting within the scope of his office or employment" must include both factual issues. Further, even if the court's power were limited to determining the issue of "scope," under the facts of this case the issue of "employee" is subsumed into the issue of "scope."

■ In determining whether Horio was an employee, the court is governed by 28 U.S.C. § 2671, and by federal rather than state law. *Brandes v. United States*, 783 F.2d 895, 896 (9th Cir.1986). However, in their determining whether Horio was acting within the scope of his employment, the court is governed by the law of California. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (*per curiam*); *United States v. McRoberts*, 409 F.2d 195, 197 (9th Cir.1969), *cert. denied*, 396 U.S. 1014, 90 S.Ct. 551, 24 L.Ed.2d 505 (1970).

■ Horio bears the burden of proof on the factual issues. And the measure of that burden of proof is a preponderance of the evidence.

## V.

■ A significant procedural question is the role of the plaintiffs in the proceedings under this statute. Plaintiffs moved to participate in the petition proceedings, and their motion was opposed both by Horio and the United States. The statute does not expressly resolve the question of the role of the tort plaintiffs in the petition.

Plaintiffs certainly have an interest in the outcome of the proceedings. They anticipate, with considerable justification, that if the petition is successful and the United States is substituted in the place of Horio, the United States will then raise defenses available to it which could result in the total or partial dismissal of plaintiffs' action. And the interests of the United States and the plaintiffs in resisting Horio's petition are not exactly the same. Both seek to deny Horio the benefits of certification under the statute. However, the United States may have at risk only the costs of defending Horio, albeit that at this stage it is too early to determine whether the United States may or may not be liable for some of the causes of action alleged by the plaintiffs. The plaintiffs' interest is to maintain all of their causes of action against Horio, including those which might ultimately be barred if the United States is substituted as a party. They have at risk the possibility of some or even all of their claims being dismissed.

Nevertheless, this court concludes that plaintiffs are not proper participants in these petition proceedings under the statute. The court reaches that conclusion for the following reasons:

1. The statute makes no reference to anyone participating in the petition proceedings other than the employee and the Attorney General.

2. The section says that the petition is to be served "upon the United States", and there is no reference to service on the plaintiffs in the action.

3. The predecessor statute, 28 U.S.C. § 2679(d) (1966), provided for the hearing to be "on a motion to remand." That clearly contemplated a motion in which the plaintiff would be a participant. The new section does not provide for that method of resolution.

4. The basic objective of the section is to restore protections to government employees that the U.S. Supreme Court had previously limited in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619

(1988). *See* 7 U.S.Code Cong. & Ad.News 5945, 5949, 5952–53 (1988).

5. In order to focus on the issue of plaintiffs' participation, the court requested plaintiffs to present an offer of proof; that is, to advise the court what evidence they would seek to present at the hearing. An offer of proof was made, but the court determines that plaintiffs' offer of proof did not add anything material on the decisions to be made. And it is not surprising that plaintiffs could not do so. The issues of employment and scope of employment are ones where the evidence would be what occurred between the government and the petitioner, evidence to which plaintiffs would have little access.

Plaintiffs assert that if they are denied the right to participate, their constitutional rights are being violated. This court does not agree. There are numerous types of litigation between two parties which ultimately determine the ability of a tort plaintiff to recover, but which do not entitle the tort plaintiff to participate. Examples are litigation between a tort defendant and his insurance company or other source of indemnity. While a cause of action can be a property right, a tort plaintiff does not have a sufficient right in the claims and defenses of the defendant employee and the United States to preclude application of federal tort claims procedures defined by Congress. *Accord: In re Consolidated United States Atmospheric Testing Litigation*, 616 F.Supp. 759, 766–71 (N.D.Cal. 1985), *aff'd*, 820 F.2d 982 (9th Cir.1987), *cert. denied sub nom., Konizeski v. Livermore Labs*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988).

The court therefore reaffirms its conclusion stated at the hearing that plaintiffs were not entitled to participate in the hearing. The court did consider written submissions made by plaintiffs, and permitted plaintiffs to state certain positions and objections on the record. However, the court denied plaintiffs the opportunity to present evidence, present witnesses, and cross examine the witnesses of Horio and the United States.

## VI.

 The court now turns to the questions of whether Horio was an employee of the United States, acting within the course and scope of his employment, in doing the acts on which plaintiffs' suit is based. While "employee" and "scope" may be separate questions, in the context of this case they are interrelated.

As stated, the issue of whether Horio was an employee is governed by federal law. Title 28 U.S.C. § 2671 includes as an "employee of the government" "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." The inquiry is primarily factual, and the key consideration is the degree of control which the United States exercised over the activities of Horio. In *Slagle v. United States*, 612 F.2d 1157 (9th Cir.1980), the circuit court determined that an informant was not an employee. *Id.* at 1160–61. That opinion listed the factors for consideration in making the factual determination, and decided that the informant was not sufficiently controlled to be an employee. Later, in *Leaf v. United States*, 661 F.2d 740 (9th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982), the circuit court determined that an informant was an agent of the United States. 661 F.2d at 741. The court distinguished *Slagle* because of the factual nature of the determinations. *Id.* That is, the court in *Leaf* determined that the control exercised by the government over the informant was sufficient there. *Id.* So, the determination to be made here is essentially a factual one, in which this court must determine, based upon the factors listed in *Slagle*, whether the government's control of Horio was sufficient to bring him within the status of an employee.

In addition, as previously stated, the determination of whether Horio was acting within the scope of his employment is governed by state law. California courts have established an alternative test. One is whether the employee's conduct was required by or incidental to the duties of the

employee and was not a substantial deviation from those duties. The other is whether the employee's conduct could reasonably have been foreseen by the employer in any event. *Clark Equipment Co. v. Wheat,* 92 Cal.App.3d 503, 520, 154 Cal.Rptr. 874 (1979); *see also* 2 *Witkin, Summary of Cal. Law* (9th Ed.1987), Agency and Employment, § 126, p. 121.

## VII.

■ The court has reviewed the evidence, both verbal and documentary, on the issues of whether Horio was an employee and was acting within the scope of his employment. Although, as stated above, those two issues involve slightly different analyses, the issues are closely related in the context of this case. The evidence on the two issues will therefore be discussed together.

The record is clear that Horio initially approached IRS Special Agent Seddio with his information that plaintiffs were acting illegally with respect to their taxable income. Seddio and Horio then agreed that Horio would be an informant for the IRS with respect to plaintiffs' activities. Horio was appointed as a "controlled informant." That is a specific term defined by § 9373.2 of the IRS manual regarding investigative procedures. Horio's appointment as a controlled informant required the approval of five persons, Special Agent Seddio, the Group Manager, the Branch Chief, the Acting Chief of the CID, and the District Director. All five persons signed their approval.

Horio was not compensated for his services to the IRS. However, 28 U.S.C. § 2671 specifically states that a person may be an employee of the government whether he acts with or without compensation. And the IRS manual in section 9373.-2(1)(d) also provides that a controlled informant may be a person who is paid or nonpaid.

Horio was an independent business consultant, who was not in the regular business of being an informant for the government. But the services he performed for the government here were also not in the scope of services he would perform for anyone else.

One conversation between Seddio and Horio was recorded, and in that conversation Seddio said, among numerous other things, that Horio was not to be considered an employee of the government. But Horio thought that Seddio simply meant that Horio would not be paid by the government. And this verbal statement was prior to the later written document approving Horio as a controlled informant.

The IRS also introduced a document on which Horio claimed a reward for the information. That application for a reward contains a printed statement that Horio "was not an employee of the Department of Treasury at the time I came into possession of the information or at the time I divulged it." However, that document was dated August 13, 1982, and Horio's appointment as a confidential informant was not approved until August 21, 1982.

The evidence is clear that with respect to gathering information about the plaintiffs, Horio was acting under the detailed control of Seddio. Horio did only that which Seddio authorized. Seddio gave express orders to Horio, and Horio did only what he was asked or told to do. Horio reported all of his information to Seddio, and Seddio asked Horio for additional information. The IRS received the benefit of Horio's work and Horio's information was used by the United States in obtaining the indictment against plaintiffs.

The high degree of control exercised by the IRS over Horio is well illustrated by the fact that the IRS "wired" Horio to record certain of his conversations with plaintiffs. The IRS supplied the equipment and gave Horio the instructions on how to use it. Horio was also given instructions on what to record and what not to record, what to say, how to discuss documents, how to identify persons present, and what to ask and not ask.

Further, Seddio testified that Horio acted at all times within the course and scope of his status as a controlled informant.

The court therefore finds and concludes that Horio was subject to the control of the IRS, and that the IRS exercised total control over the details of all of Horio's activities that are at issue. In those activities, Horio was an employee of the United States within the meaning of 28 U.S.C. § 2671, and was an employee acting within the scope of his office or employment within the meaning of 28 U.S.C. § 2679(d)(3).

## VIII.

IT IS THEREFORE ORDERED that:

1. The petition of Horio is granted.

2. The court finds and certifies that Horio was an employee of the United States, acting within the scope of his office or employment, in regard to the incidents out of which this suit arises.

3. This action shall hereafter be deemed to be an action brought against the United States under the provisions of Title 28 of the United States Code, and the United States is substituted in the place of James Horio as the party defendant. However, this substitute shall not apply to the tenth cause of action asserted in the amended complaint, because of the exclusion provided in 28 U.S.C. § 2679(b)(2).

4. The court is making no ruling on Horio's petition insofar as it also seeks dismissal of plaintiffs' allegations. The parties may make whatever additional motions they believe are now appropriate, including motions to dismiss or for summary judgment, within thirty (30) days of the date of this order.

5. Until such additional motions are ruled upon, or until thirty days expire without the making of such motions, all discovery is stayed.