**MERIDIAN INTERNATIONAL LOGISTICS, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America and Does 1 through 100, inclusive, Defendants-Appellees.**

No. 90-55281.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1991.

Decided July 19, 1991.

---

Mark P. Robinson and John D. Rowell, Robinson, Robinson & Phillips, Los Angeles, Cal., for plaintiff-appellant.

Marleigh D. Dover, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before TANG, REINHARDT and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Meridian International Logistics, Inc. ("Meridian"), appeals from the district court's order dismissing its complaint for lack of subject matter jurisdiction. Meridian originally brought this libel and slander action against Thomas Gates, an agent with the Federal Bureau of Investigation. After the United States Attorney certified that Gates was acting within the scope of his FBI employment in taking the actions giving rise to Meridian's complaint, the United States was substituted as defendant. The district court dismissed for lack of subject matter jurisdiction because the Federal Tort Claims Act 1) exempts libel and slander actions, and 2) requires a claimant to file an administrative claim prior to proceeding against the United States. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the judgment of the district court and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

In September 1987, the FBI began an investigation of the activities of Robert Booth Nichols. Nichols, acting through Meridian, was suspected of being involved in organized crime. The investigation was led by Special Agent Thomas Gates, operating out of the FBI's Los Angeles Division. During the course of his investigation, Gates learned that Nichols had potential illegal contacts with individuals in both Japan and Australia. Gates pursued these leads through Japanese and Australian legal attaches.

On June 16, 1989, Meridian filed a complaint for libel, slander, and interference with contractual relationships in California

state court against Gates in his individual capacity. In the complaint, Meridian alleges that Gates, during his investigation, related to the Australian Federal Police and various individuals in Australia and Japan that Meridian was involved in organized crime and various specific fraudulent activities. Meridian further alleges that Gates was acting outside the scope of his employment when he initiated the contacts in Australia and Japan. The complaint prays for damages in the amount of $11,000,000.

On July 20, 1989, the United States Attorney certified, pursuant to 28 U.S.C. § 2679(d), that Gates was acting within the scope of his FBI employment in taking the actions which gave rise to Meridian's complaint. As a result of the certification, the action was removed to United States District Court for the Central District of California and the United States was substituted into the action as the sole defendant. 28 U.S.C. § 2679(d)(2).

On July 26, 1989, the United States moved to dismiss the action for lack of subject matter jurisdiction. In support of its motion, the United States submitted declarations from Gates, his supervisor, and an attorney with the Department of Justice (the "FBI declarations"). The United States applied ex parte to have the FBI declarations sealed, and the district court granted the application. The Government asserted that the FBI declarations support a conclusion that Gates was acting within the scope of his employment at all times material to Meridian's complaint. In opposition to the United States' motion to dismiss, Meridian filed a declaration from Ted Gunderson, a former special agent with the FBI. Gunderson declared that the types of foreign contacts made by Gates would never, under FBI policies, be initiated by an agent assigned to the Los Angeles field office.

On September 25, 1989, the district court held a hearing on the motion to dismiss. Based on the United States Attorney's certification and the FBI declarations, which were reviewed in camera, the court determined that Gates was "at all times material to the incidents alleged in the Complaint, acting within the course and scope of his employment for the United States of America." The court's determination of the scope of employment issue guaranteed both the substitution of the United States as the lone defendant and the resulting applicability of the Federal Tort Claims Act ("FTCA"). The court then dismissed the action for lack of subject matter jurisdiction because the FTCA 1) excepts claims arising out of libel, slander, and interference with contractual rights, 28 U.S.C. § 2680(h), and 2) requires that a claimant first present any claim to the appropriate federal agency. 28 U.S.C. § 2675(a).

## DISCUSSION

Meridian appeals from the district court's order dismissing its complaint. We review a district court's dismissal for lack of subject matter jurisdiction de novo. *Kruso v. Int'l Tel. & Tel. Co.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *Jensen v. IRS*, 835 F.2d 196, 198 (9th Cir.1987). Meridian focuses on the district court's granting of the Government's ex parte application to have the FBI declarations sealed, the in camera inspection of the declarations, and the court's conclusion that Gates was operating within the scope of his employment. In order to illustrate best the relevance of the district court's scope of employment determination to the ultimate dismissal of Meridian's complaint, we will first discuss the court's subject matter jurisdiction assuming that Gates acted within the scope of his employment. Then, we will address the district court's review of the scope of employment issue.

## A. The District Court's Subject Matter Jurisdiction

■ The FTCA, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, provides a remedy for persons injured by the tortious activity of an employee of the United States, where the employee was "acting within the scope of his office or employment...." 28 U.S.C. § 1346(b). However, there are certain limitations to the right to bring suit against the United States under the FTCA, two of which apply to Meridian's suit. First, 28 U.S.C. § 2680(h) specifically excepts from

the FTCA "[a]ny claim arising out of ... libel, slander, ... or interference with contractual rights...." Section 2680(h)'s exceptions are jurisdictional in nature. *See Morrill v. United States*, 821 F.2d 1426, 1426–27 (9th Cir.1987). It is uncontroverted that Meridian's complaint involves, and is limited to, libel, slander, and interference with contractual rights. Therefore, if Gates was acting within the scope of his employment, the district court lacks subject matter jurisdiction over Meridian's suit pursuant to § 2680(h).

■ Second, 28 U.S.C. § 2675(a) establishes that a FTCA action "shall not be instituted" against the United States unless the claimant first presents his claim to the "appropriate Federal agency" and the claim is denied. The claim requirement of § 2675(a) is a jurisdictional limitation. *Blain v. United States*, 552 F.2d 289, 291 (9th Cir.1977). It is uncontroverted that Meridian failed to present its claim to a federal agency prior to the initiation of this suit. Therefore, if Gates was acting within the scope of his employment, the district court additionally lacks subject matter jurisdiction over Meridian's suit pursuant to § 2675(a).

## B. The District Court's Review of the Scope of Employment Certification

If Gates was acting within the scope of his employment, the United States is the proper defendant, and, as discussed above, the district court lacks subject matter jurisdiction over the action. Therefore, the only means of survival for Meridian's action is as a suit against Gates in his personal capacity.[1] Such a suit is only possible if the substitution of the United States as the defendant can be reversed by a showing that Gates was in fact acting *beyond* the scope of his employment in taking the alleged actions. Our analysis of the substitution issue consists of two steps. First, we address the district court's power to review the Government's scope of employment certification. Second, we consider the district court's conclusion that the substitution was proper because Gates was acting within the scope of his employment.

### 1. *The District Court's Power to Review the Scope of Employment Certification*

■ The Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679 (the "Reform Act"), authorizes the Attorney General to certify [2] that a United States employee was acting within the scope of his employment at the time of an incident which gave rise to a civil claim. 28 U.S.C. §§ 2679(d)(1) and (2).[3] Once certification is given in a civil action, the Reform Act mandates both the substitution of the

---

1. The Supreme Court has recently held that, where an action is properly against the United States under the FTCA, the FTCA is the "exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability." *United States v. Smith*, — U.S. —, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991).

2. The Attorney General, pursuant to his authority under 28 U.S.C. § 510, has delegated this authority to the United States Attorneys. 28 C.F.R. § 15.3.

3. Section 2679(d) reads in part:
   (1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
   (2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

United States as the defendant, *id.*, and, if initiated in state court, the removal of the action to the United States District Court. 28 U.S.C. § 2679(d)(2).

The instant case illustrates the operation of the Reform Act. Meridian initiated the action against Gates, as an individual, in California state court. Pursuant to § 2679(d)(2), the action was removed to federal court and the United States was substituted for Gates as the lone defendant. However, in district court, Meridian challenged the Government's scope certification, and the district court entertained the challenge. The Reform Act is silent on the capacity of the district court to review scope certifications. We must, as a threshold matter, consider whether the Government's certification under § 2679(d) is binding for the purpose of substitution of the Government or whether the certification is subject to judicial review.[4] This is an issue of first impression in the Ninth Circuit. As it is a matter of law, this court's review is de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

This issue has been considered by other courts, the majority of which has held that district courts have the power to review scope certifications.[5] These courts have concluded that both the language and the legislative history of the Reform Act imply that Congress intended to allow judicial review of scope determinations. Section 2679(d)(2) concludes by providing that "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2). In light of this language and the Reform Act's comparative silence as to the conclusive effect of certifi-

cation on substitution, the inference is that "Congress intended to make scope certification unreviewable only with respect to removal" and not with respect to substitution. *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1540 (11th Cir.1990); *see also Melo v. Hafer*, 912 F.2d 628, 641 (3rd Cir.1990), *cert. granted*, — U.S. —, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991).

The legislative history of the Reform Act indicates that legislators had the belief that certification could be challenged. Representative Frank, the sponsor of the Act stated that, "the plaintiff would still have the right to contest the certification if they [sic] thought the Attorney General were [sic] certifying without justification." *Legislation to Amend the Federal Tort Claims Act: Hearing Before the Subcommittee on Administrative Law and Governmental Relations of the Committee on the Judiciary*, 100th Cong., 2d Sess. 60, 128 (April 14, 1988). *See also Lehtinen*, 913 F.2d at 1541 (other legislator comments and discussions supporting judicial review of scope certification).

Beyond the Reform Act's language and history, there are two compelling reasons to allow judicial review of scope determinations. First, if the Government's scope certification has a conclusive effect on substitution, the executive branch would have the power to dictate the judicial branch's subject matter jurisdiction. *Lehtinen*, 913 F.2d at 1541–42; *Nasuti v. Scannell*, 906 F.2d 802, 813 (1st Cir.1990). Such power in the executive branch raises troubling separation of powers issues. Second, leaving the final determination of scope to the Attorney General would allow an interested party to control a dispositive issue and would present possible due process implications. *Lehtinen*, 913 F.2d at 1542.

---

**4.** The Government does not contest the district court's power to review the scope certification. However, because the issue is one of first impression in this circuit and is a necessary logical step in the review of this case, we address it briefly in this section.

**5.** *See Hamrick v. Franklin*, 931 F.2d 1209 (7th Cir.1991); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1542–44 (11th Cir.1990), *amended*, 924 F.2d 1555 (11th Cir.1991) (judicial review of

scope certifications permitted); *Melo v. Hafer*, 912 F.2d 628, 639–42 (3rd Cir.1990), *cert. granted*, — U.S. —, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991) (same); *Nasuti v. Scannell*, 906 F.2d 802, 812–13 (1st Cir.1990) (same); *Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir.1990) (same). *But see Mitchell v. Carlson*, 896 F.2d 128, 134–36 (5th Cir.1990) (suggesting no judicial review of scope determinations); *Aviles v. Lutz*, 887 F.2d 1046, 1049 (10th Cir.1989) (same).

We adopt the rule that district courts may review the Attorney General's scope determinations. Accordingly, we must determine what level of deference the district court should afford the certification. We agree with the other courts which have considered this issue and hold that the review is de novo. *See id.* at 1543; *Nasuti,* 906 F.2d at 808. This conclusion is dictated by the same considerations, discussed above, which support the district court's review generally. *See Lehtinen,* 913 F.2d at 1543.

### 2. *The District Court's Conclusion that Gates Acted Within the Scope of his Employment*

Relying on both the Government's certification and the FBI declarations, the district court concluded that "Gates was, at all times material to the incidents alleged in the Complaint, acting within the course and scope of his employment for the United States of America." Meridian challenges the court's scope of employment finding on two levels. First, it argues that the court's granting of the Government's ex parte application to have the FBI declarations sealed and the subsequent in camera review were prejudicial. Second, it implicitly argues that the district court's determination was, on the merits, incorrect.

■ Meridian argues that the ex parte/in camera procedure followed by the district court was "highly unusual and unduly prejudicial." Meridian's argument rests on the fact that it was unable to review the FBI declarations and cross-examine the declarants. The Government responds to Meridian's argument by claiming that a general governmental privilege prevents disclosure of the FBI declarations. It argues that to compel disclosure of the FBI declarations would place the Government in an untenable situation—either reveal secrets of an ongoing investigation or allow an agent to be sued in his individual capacity.

While in our judicial system adversary proceedings are the norm and ex parte proceedings the exception, this court has generally recognized the capacity of a district judge to "fashion and guide the procedures to be followed in cases before him." *United States v. Thompson,* 827 F.2d 1254, 1257 (9th Cir.1987) (finding, in a criminal context, that district court erred in considering government's reasons for utilization of peremptory challenges ex parte). "[D]istrict judges are able to consider matters that may be unique to particular fact situations and tailor procedures to serve the ends of justice...." *Id.* at 1258. We find that the procedure used by the court in the instant case was proper; it adequately balanced the rights of the Government and Meridian. The Government's interest in having FBI documents, which relate to an ongoing investigation, remain confidential was clearly satisfied by the court's action; and although Meridian did not have the opportunity to conduct discovery and cross-examine the Government's witnesses, its interests as a litigant are satisfied by the ex parte/in camera decision of an impartial district judge. However, because procedures such as these should be used only in unique situations, we are careful to limit our holding to the precise facts of this case.

■ On the merits, the district court concluded that Gates acted within the scope of his employment. Whether a Government employee was acting within the scope of his employment is a mixed question of law and fact which this court reviews de novo. *McConney,* 728 F.2d at 1203. Our review of the FBI declarations leads us to the conclusion that they are insufficient to determine conclusively that agent Gates acted within the scope of his employment. The declarations only assert generally that Gates' investigation was proper. They do *not* address the specific factual allegations of Meridian's complaint with regards to the foreign contacts allegedly initiated by Gates. We must, therefore, reverse the judgment of the district court and remand for further proceedings. On remand, the court should reconsider the scope of employment issue. In this regard, the court should entertain further documentary proof by the parties.

## CONCLUSION

The judgment of the district court is reversed. The case is remanded for further proceedings consistent with this opinion.