**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| M.J., a minor, by her mother and next friend Helena Beebe, *Plaintiff-Appellant*, | No. 11-35625 |
| | D.C. No. 4:09-cv-00013-RRB |
| v. | |
| UNITED STATES OF AMERICA, *Defendant-Appellee*, | OPINION |
| J.P., a minor, *Third-Party-Defendant-Counter-Claimant – Appellant*, | |
| CITY OF QUINHAGAK, *Defendant-Third-Party-Plaintiff – Appellee*. | |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
May 24, 2013—Fairbanks, Alaska

Filed July 1, 2013

Before: A. Wallace Tashima, Richard C. Tallman,
and N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

## SUMMARY[*]

### Diversity/Vicarious Liability

The panel affirmed the district court's summary judgment in this diversity action seeking to hold the Alaskan city of Quinhagak liable for injuries caused by the negligence of Derrick Johnson, a Native Village of Kwinhagak tribal police officer.

The panel noted that under Alaska state law, an employee's immunity from tort liability precludes an employer from being held vicariously liable for the employee's negligence. The panel held that Johnson was immune from individual liability for plaintiffs' tort claims, both under the Federal Tort Claims Act and the tribe's sovereign immunity. Accordingly, because plaintiffs sought to hold the City vicariously liable on a non-delegable duty theory for the negligent conduct of an immune independent contractor, plaintiffs' claims against the City failed.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Russell Lee Winner (argued), Winner & Associates, P.C., Anchorage, Alaska, for Plaintiff-Appellant and Counter-Claimant-Appellant.

Constance Cates Ringstad (argued), Clapp, Peterson, Tiemessen, Thorsness & Johnson, Fairbanks, Alaska, for Defendant-Appellee.

**OPINION**

N.R. SMITH, Circuit Judge:

Under Alaska state law, an employee's immunity from tort liability precludes an employer from being held vicariously liable for the employee's negligence. *See City of N. Pole v. Zabek*, 934 P.2d 1292, 1300 (Alaska 1997). Vicarious liability claims include those premised on a "non-delegable duty"—the theory that an employer can be held liable for an independent contractor's negligence if the contractor acted negligently while performing a duty the employer could not delegate. *See Ward v. Lutheran Hosps. & Homes Soc'y of Am., Inc.*, 963 P.2d 1031, 1034 n.5 (Alaska 1998). Because Plaintiffs seek to hold the City of Quinhagak vicariously liable on a "non-delegable duty" theory for the negligent conduct of an immune independent contractor, Plaintiffs' claims against the City fail. We therefore AFFIRM the district court's grant of summary judgment in the City's favor.

## FACTS & PROCEDURAL HISTORY

### I.  Background

The tort claims underlying this appeal arise from a four-wheeler accident that occurred in August 2006 in the rural Alaskan city of Quinhagak (the "City").  The City shares approximately the same geographic space and is populated by roughly the same 650 individuals as the Native Village of Kwinhagak ("NVK"), a "federally recognized tribe."  *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 73 Fed. Reg. 18553, 18557 (April 4, 2008).

Plaintiff M.J. and Counter-Claimant J.P. (together, referred to as "Plaintiffs") seek to hold the City liable for injuries caused by the negligence of Derrick Johnson, an NVK tribal police officer ("TPO").  According to Plaintiffs, Johnson "ordered [them] to ride on the back of [a] four-wheeler," after he found them violating a curfew ordinance. Plaintiffs allege that they were subsequently "thrown off" the four-wheeler and injured when Johnson lost control of the four-wheeler.  Because NVK (not the City) employed Johnson at the time of the incident, the extent to which Plaintiffs may hold the City liable for Johnson's conduct depends on the nature of the relationship between the City and NVK.  The history of police services in the remote bush community provides relevant context for understanding that relationship.

Before 1996, the State of Alaska and the City shared the community's law enforcement responsibilities.  Under that arrangement, state-funded Alaska State Troopers posted in "hub" communities would respond to "emergencies or

reported felonies" in Quinhagak.  *See Alaska Inter-Tribal Council v. State*, 110 P.3d 947, 951 (Alaska 2005). Additionally, to provide "some local law enforcement services," the City hired Village Police Officers ("VPOs") "intermittently, and as funds permitted." *Id.*  VPOs were not subject to the state's minimum standards for police officers and received very limited law enforcement training.  *See* Alaska Admin. Code tit. 13, §§ 85.005, 89.040 (2012).

In addition to state troopers and VPOs, a local, state-funded magistrate played a key role in the community's justice system.  The magistrate adjudicated violations of the City's ordinances, including a curfew ordinance.  However, the State phased out the City's magistrate position in 1993. Due to its remoteness from municipalities that had the capacity to adjudicate offenses, this phase out effectively terminated the City's ability to enforce its ordinances in the community.

In 1996, the City and NVK entered into a Memorandum of Agreement ("MOA").  In effect, the MOA allocated all responsibility for governing the community to NVK and relegated the City to "perform[ing] the minimum requirements spelled out in the Alaska Statutes to retain the status of 2nd Class City" so that it would continue to receive state funding.  Therefore, NVK took on the role of providing a local justice system by "enacting its own Tribal Code, including [a] curfew, and instituting its own Tribal Court." As a result, "Tribal laws and codes [became] the primary laws governing tribal members in the village."[1]  NVK also

---

[1] As evidence of this, the former state magistrate became the first Chief Justice of the Tribal Court, which "accept[ed] and hear[d] only violations of tribal law."

agreed to "provide law enforcement protection" for the community, to which the City contributed financially.

The relationship between the City, NVK, and Johnson took on another dimension in 1999 when NVK entered into a Compact of Self-Governance with the United States (the "Compact"). In general, the Compact and subsequent implementing agreements, titled Annual Funding Agreements ("AFAs"), transferred certain responsibilities for governing the tribe, such as public safety and policing, from the federal government to NVK. Under the AFAs, the United States provided funds to NVK, which NVK spent on delivering these services. In 2006, NVK used such funds to hire Johnson as a TPO. As discussed below, this had the effect of making Johnson a federal employee for the purposes of this case. *See infra* Discussion, Part 1.

## II. Procedural History

M.J. (represented by her mother and next friend) filed her complaint on May 13, 2008, seeking over $100,000 in damages from Johnson and the City for injuries M.J. sustained as a result of Johnson's negligent driving of the four-wheeler. Johnson is no longer a party to the lawsuit. On April 16, 2009, the United States Attorney for the District of Alaska "certified" that Johnson was deemed to be a *federal* employee for purposes of this lawsuit, because he was providing services under an AFA at the time of the accident. Accordingly, the United States substituted itself for Johnson

under the Westfall Act, 28 U.S.C. § 2679(d)(2), and removed the case to federal court.[2]

Nevertheless, M.J. sought to hold the City liable for Johnson's negligence on three different theories: (1) vicarious liability; (2) negligent hiring, supervision, and training; and (3) negligent entrustment. However, only M.J.'s vicarious liability claim is at issue on appeal. In that claim, M.J. alleged that

> At all material times, Johnson was an employee or agent of the City of Quinhagak acting within the scope of his employment or agency. Additionally, at all material times Johnson was performing a non-delegable duty on behalf of the City of Quinhagak. The City of Quinhagak is vicariously liable for Jones's injuries and damages.

The City answered M.J.'s complaint on January 8, 2010. In its answer, the City named J.P. as a third-party defendant and alleged that J.P. caused M.J.'s injuries "in whole or part . . . [by] overloading and abruptly moving on the four-wheeler so as to cause Johnson to lose control of the four-wheeler." On April 5, 2010, J.P. responded and asserted counterclaims against the City on the same grounds as M.J. J.P. did not make any claims against Johnson or the United States.

---

[2] Section 2679(d)(2), a component of the Federal Tort Claims Act, authorizes the United States to substitute itself for a federal employee who has been sued for conduct arising in the course of his or her employment. *Id.* § 2679(b)(1), (d)(1)–(2). Plaintiffs do not contest the United States' certification of, or substitution for, Johnson on appeal.

The City then moved for summary judgment on Plaintiffs' vicarious liability claims. The district court initially denied the motion on October 21, 2009, concluding that the City owed a non-delegable duty to "maintain public order" by "provid[ing] police services." As discussed below, the non-delegable duty doctrine is an exception to the general rule that an employer cannot be held liable for torts committed by its independent contractors. *See infra* Discussion, Part 2; *see also Ward v. Lutheran Hosps. & Homes Soc'y of Am., Inc.*, 963 P.2d 1031, 1034 n.5 (Alaska 1998).

Nearly one-and-a-half years later, the district court reconsidered this determination and ordered supplemental briefing on the issue. With the benefit of that briefing, the district court reversed course and granted summary judgment to the City on May 18, 2011. The district court concluded that the City was not vicariously liable to Plaintiffs, because it did not owe a non-delegable duty to provide police services. Plaintiffs appealed.

After Plaintiffs filed their Notice of Appeal, the United States made an offer of judgment to M.J. for $150,000 under Federal Rule of Civil Procedure 68. M.J. accepted this offer, and the district court entered judgment against the United States in that amount on November 10, 2011.[3]

## STANDARD OF REVIEW

"We review de novo a district court's grant of summary judgment." *Shelley v. Geren*, 666 F.3d 599, 604 (9th Cir.

---

[3] Because J.P. did not sue Johnson, the United States did not become a defendant as to any of her claims. The United States, therefore, did not make her a Rule 68 offer.

2012). When conducting this review, "[w]e may affirm on any ground supported by the record." *Olson v. Morris*, 188 F.3d 1083, 1085 (9th Cir. 1999).

## DISCUSSION

Plaintiffs seek to hold the City liable for Johnson's alleged negligence on the theory that the City had a "non-delegable" duty to provide law enforcement services to the community. No Alaska law clearly holds that the City owed such a duty. However, we can resolve this case without deciding whether it did. Instead, we need only determine (1) whether Johnson qualifies for any immunity from tort liability, and, if so, (2) whether Johnson's immunity extends to the City to bar Plaintiffs' claims. We answer both questions in the affirmative, and accordingly AFFIRM the district court.[4]

---

[4] As a threshold matter, we reject the City's argument that M.J.'s acceptance of the United States' $150,000 Rule 68 offer moots her appeal under res judicata principles. Assuming that the district court's judgment based on the United States' offer of judgment was a *final* judgment for res judicata purposes, *see Wilkes v. Wy. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002) (assuming that judgment pursuant to Rule 68 offer has res judicata effect because parties did not contest that determination), res judicata does not preclude M.J. from pursuing an additional judgment against the City, *see Gonzalez v. Hernandez*, 175 F.3d 1202, 1207 (10th Cir. 1999) ("Courts applying section 51(2) [of the Restatement (Second) of Judgments] have held that a judgment in favor of the injured party in a vicarious liability relationship does not preclude a second action against nonparties except as to the amount of damages.").

## 1. Johnson is immune from tort liability as to M.J. and J.P.

Johnson is immune from individual liability for Plaintiffs' tort claims, both under the Federal Tort Claims Act ("FTCA") and the tribe's sovereign immunity. The FTCA immunizes federal employees from individual liability for an "action [that] is properly against the United States under the FTCA." *See Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 743 n.1 (9th Cir. 1991). In such cases, "the FTCA is the 'exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability.'" *Id.* (quoting *United States v. Smith*, 499 U.S. 160, 166 (1991)). Thus, if a claim is properly against the United States under the FTCA, the FTCA becomes the sole remedy and the individual tortfeasor is immunized from liability.

Here, Plaintiffs do not dispute that their tort claims are properly against the United States under the FTCA. Controlling federal regulations plainly dictate that this is so: "No claim may be filed against a self-governance Tribe/Consortium *or employee* based upon performance of functions under a self-governance AFA. All claims shall be filed against the United States and are subject to the limitations and restrictions of FTCA." 25 C.F.R. § 1000.279 (emphasis added). Plaintiffs' tort claims fall squarely within the terms of the regulation, because they are based on Johnson's performance of functions under NVK's 2006 AFA. In that AFA, NVK agreed to "assume responsibility for implementation and administration of . . . programs, services, functions and activities" including "Public Safety/Policing." At the time of the accident, Johnson was providing policing services under this agreement. Accordingly, Plaintiffs' tort claims are properly against the United States under the

FTCA, and Johnson is immune from liability, as Plaintiffs' "exclusive" remedy is against the federal government. *See Smith*, 499 U.S. at 166.

Johnson is also immune from tort liability by application of NVK's sovereign immunity as an Indian tribe. "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). This immunity "protects tribal employees acting in their official capacity and within the scope of their authority." *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008). Here, NVK employed Johnson as a TPO at the time of the accident. Plaintiffs do not dispute that Johnson was acting in that official capacity when he engaged in the conduct giving rise to Plaintiffs' claims. Accordingly, Johnson is also immune from tort liability under tribal sovereign immunity.

## 2. Johnson's immunity precludes Plaintiffs' claims against the City.

Because Johnson is immune, Plaintiffs' claims against the City for Johnson's negligence fail if those claims are based on the City's vicarious liability for Johnson's negligence. Under Alaska law, "[f]or vicarious liability to attach, some sort of underlying liability must be established for which the employer can be held liable." *See City of N. Pole v. Zabek*, 934 P.2d 1292, 1300 (Alaska 1997); *see also* 57 Am. Jur. 2d *Municipal, etc., Tort Liability* § 11 (2013) ("The tort immunity of a local government entity may, in some cases, be derived from the official immunity of its officers and

employees.").[5]  Because Plaintiffs cannot establish Johnson's "underlying liability," we must determine whether Plaintiffs' claims against the City—premised on the theory that the City owed them a "non-delegable" duty—are based on vicarious liability.  We conclude that they are.

In *Ward v. Lutheran Hospitals & Homes Society of America, Inc.*, the Alaska Supreme Court noted that, under the non-delegable duty doctrine, "the [employer] bears *vicarious liability* for the torts of at least some of its [independent contractors]."  963 P.2d at 1034 n.5 (emphasis added); *see also Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 838–39 (Alaska 2003) (discussing non-delegable duty doctrine using vicarious liability terminology).[6]  Additionally, the conclusion that the non-delegable duty doctrine is a theory of vicarious liability flows logically from the doctrine's relationship to other tort rules.  Specifically, the doctrine constitutes an "exception to the rule that an employer is not liable for the negligence of an independent contractor." *Jackson v. Power*, 743 P.2d 1376, 1383 (Alaska 1987), *overruled on other grounds by* Alaska Stat. § 09.65.096, *as recognized in Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1067 (Alaska 2002).  That general rule, which shields an

---

[5] We acknowledge that some treatises are in conflict with this rule.  *See* Restatement (Second) of Agency § 217(b)(ii) (2012) ("The principal has no defense because of the fact that . . . the agent had an immunity from civil liability as to the act."); 2A C.J.S. *Agency* § 438 (2013) ("Under the doctrine of respondeat superior, a principal has no defense based on an agent's official immunity from civil liability for an act committed in the course of employment.").  However, Plaintiffs provide no persuasive reason why Alaska would adopt those positions.

[6] At least one treatise also supports this position.  *See* 41 Am. Jur. 2d *Independent Contractors* § 43 (2013).

employer from liability for the conduct of its independent contractors, cuts off the employer's *vicarious* liability for the contractor's torts. *See Sievers v. McClure*, 746 P.2d 885, 889 n.6 (Alaska 1987). Therefore, if the non-delegable duty doctrine is an exception to the general rule that an employer cannot be held vicariously liable for the torts of his independent contractor, applying the doctrine would *permit* such vicarious liability to attach. Therefore, we conclude that Plaintiffs have premised their "non-delegable duty" claim against the City on a theory of vicarious liability.

We reject Plaintiffs' argument that the non-delegable duty doctrine is not a theory of vicarious liability. Plaintiffs' best case in support of this argument comes from New Mexico. *See Saiz v. Belen Sch. Dist.*, 827 P.2d 102 (N.M. 1992). However, the *Saiz* decision does not represent the majority view, nor is it the rule applicable in Alaska. Plaintiffs cite no reason why Alaska courts would adopt the *Saiz* view.

Because Plaintiffs' claims against the City are based on a theory of vicarious liability, their claims fail. We acknowledge that this result may seem harsh, because Plaintiffs cannot recover for their injuries against the City. However, this result is not unjust. Plaintiffs could have sought relief from the United States under the FTCA. Indeed, M.J. obtained such relief by filing a claim against Johnson individually, later settling with the United States for $150,000—$50,000 more than the minimum she sought in her complaint. J.P., on the other hand, never filed a claim against Johnson or the United States under the FTCA. Her failure to pursue that remedy does not justify setting aside the

principles of immunity and vicarious liability discussed above so that she may pursue a claim against the City.[7]

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of the City. Johnson's immunity under the FTCA and as a tribal employee precludes Plaintiffs from succeeding on their vicarious liability claims against the City.

**AFFIRMED.**

---

[7] We note that the question of whether the FTCA's statute of limitations is subject to equitable tolling is currently pending before an en banc panel. *See Wong v. Bebee*, 704 F.3d 816 (9th Cir. 2013) (taking the case en banc). *Compare Marley v. United States*, 567 F.3d 1030, 1035–36 (9th Cir 2008) (holding that equitable tolling does not apply to the FTCA's statute of limitations), *with Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (holding that "equitable tolling is available for FTCA claims in appropriate circumstances"). However, the availability of such equitable tolling is not before us and does not affect our conclusion that immunity bars J.P.'s vicarious liability claims against the City.